Steven B. Derounian, J.
On April 10, 1968, the Incorporated Village of Kensington (Kensington) entered into a written agreement with the defendant Broadway Maintenance Corp. (Broadway) wherein Broadway (as the low bidder) agreed to ‘1 furnish, install and maintain a complete new street lighting system, including an electrical distribution system, where necessary, throughout the Village of Kensington for a period of ten (10) years commencing with June 1, 1968 ”.
The instant action was brought by a resident taxpayer to restrain defendants from proceeding with such agreement until a ‘£ -special franchise ’ ’, as defined in subdivision 17 of section 102 of the Real Property Tax Law, is first obtained by Broadway from Kensington.
The instant application for summary judgment was brought on by Broadway and is-primarily based upon the assertion that the installation and maintenance of a street lighting system by it is protected from taxation as a special franchise, -since operation of a street lighting system is the proper exercise of the governmental function of Kensington, the system will be used solely by Kensington, and the increased cost to Broadway of a special franchise would be reflected in increased costs to Kensington.
The facts are conceded and what remains for disposition on this -application is a question of law.
In the opinion of this court, the resolution of this question requires a grant of the application and the award of summary judgment in favor of defendants dismissing the complaint.
*123 The classic definition of a franchise was given long ago. ‘ ‘ A franchise is a special privilege conferred by government on individuals, and which does not belong to the citizens of a country generally, by common right.” (Curtis v. Leavitt, 15 N. Y. 9, 170.) A “ special franchise ” as defined in subdivision 17 of section 102 of the Beal Property Tax Law, reads as follows: “ 1 Special franchise’ means the franchise, right, authority or permission to construct, maintain or operate in, under, above, upon or through any public street, highway, water or other public place mains, pipes, tanks, conduits, wires or transformers, with their appurtenances, for conducting water, steam, light, power, electricity, gas or other substance. * * * The term special franchise shall not include property of a municipal corporation ”.
It would be self-defeating to require the enforcement of this section under the facts. Following it to a logical conclusion, a bidder would necessarily take into consideration the “ special franchise ” when submitting a bid to the municipality and such consideration would increase the bid.
This court finds that the action of the Village Board in adopting a resolution awarding the lease to Broadway and thereafter duly executing said lease did not result in authorizing a use which becomes subject to a special franchise as set forth in subdivision 17 of section 102 of the Beal Property Tax Law; nor did such action adversely affect, limit or vitiate the exception extended to municipal property as provided in said section. The facts in this case distinguish same from the usual line of eases arising out of subdivision 17 of section 102 of the Beal Property Tax Law, in that the purpose is exclusively for a sovereign use, installed on the fee of the municipality. The lease does not diminish the interest of Kensington, but, rather, adds ,to it and improves it. Kensington does not lose any of the municipal property rights possessed before the installation and protected by the exception in subdivision 17 of. section 102 of the Beal Property Tax Law, and to require Broadway to obtain a special franchise would have the net effect of limiting the municipality in the exercise of its sovereign power, something not intended by the Legislature when enacting said section.
There is no dispute of the fact that Kensington owns the real property upon which Broadway will install the equipment to be leased to Kensington in pursuit of one of the sovereign functions of the ViHage of Kensington.
A special franchise is the vehicle of legal structure by means of which permission is obtained to function in an area where, absent such special franchise, there would otherwise be a tres *124 pass committed. As a result of such permission a res is created upon which a tax can be imposed. The special franchise is a unique creature born in the Legislature, among other things, to create revenue for governmental use. It would, in the court’s opinion, be an improvident and unwarranted extension of the statute to apply subdivision 17 of section 102 of the Beal Property Tax Law to the set of facts now before the court.
The structures to be installed on the real property of the village will for all practical purposes become the exclusive property of the village in every sense of the word and without limitation, except as to legal title, for so long as the lease agreement is in full force and effect. The statute does not contain limiting language as respects ‘ ‘ property of a municipal corporation ” so as to exclude a lease of equipment installed on municipally owned realty.
To apply the rationale offered by plaintiff in support of his argument that the lessor should obtain a special franchise would defeat the legislative intent to increase municipal revenue and would not in any practical sense produce a benefit for the municipality or the taxpayers, including the plaintiff. Accordingly, since the defendants have demonstrated their right to the relief sought herein, summary judgment is directed in their favor and the complaint is dismissed, with costs.